**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SAMANTHA THOMASON,
    an individual,

        Plaintiff,

V

CITY OF DETROIT
a municipal corporation,

DEROND MARTEZ CRAWFORD,
City of Detroit Police Officer,
Individually, and in her Official Capacities,

MAURICE BELLAMY,
City of Detroit Police Officer,
Individually, and in her Official Capacities,

        Defendants.

Case No.
Hon.

**COMPLAINT AND JURY
DEMAND**

---

## COMPLAINT AND JURY DEMAND

NOW COMES PLAINTIFF, SAMANTHA THOMASON, by and through

counsel, and for her Complaint against DEFENDANTS states as follows:

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States,

including 42 U.S.C. § 1983.

1

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over PLAINTIFF's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred within Wayne County, Michigan.

**PARTIES**

5. PLAINTIFF, SAMANTHA THOMASON, hereinafter referred to as "PLAINTIFF," is an adult resident of the State of Michigan.

6. DEFENDANT CITY OF DETROIT, hereinafter referred to as "DEFENDANT DETROIT," is a municipal corporation organized and existing under the laws of the State of Michigan.

7. DEFENDANT OFFICER DEROND MARTEZ CRAWFORD, hereinafter referred to as "DEFENDANT CRAWFORD," was at all relevant times a police officer employed by the Detroit Police Department and acting under color of state law.

8. DEFENDANT OFFICER MAURICE BELLAMY, hereinafter referred to as "DEFENDANT BELLAMY," was at all relevant times a police officer employed by the Detroit Police Department and acting under color of state law.

9. At all relevant times, DEFENDANTS acted under color of state law and within the course and scope of their employment and authority.

## FACTUAL ALLEGATIONS

10. On or about March 3, 2026, PLAINTIFF left Greektown Casino in downtown Detroit with her boyfriend, Lorenzo Holloman, and Matthew Bridges.

11. PLAINTIFF stopped at a Sunoco gas station at 17230 Harper Avenue Detroit, Michigan 48224 near her residence.

12. While inside the gas station, PLAINTIFF accidentally bumped into two individuals later identified as Detroit police officers and immediately apologized.

13. After checking out of the gas station, PLAINTIFF entered her vehicle and drove toward her residence, which was located only a short distance away.

14. As PLAINTIFF exited the gas station, DEFENDANT CRAWFORD and DEFENDANT BELLAMY began following PLAINTIFF's vehicle.

15. When PLAINTIFF approached the intersection near Morang and Harper Avenue, DEFENDANTS positioned their vehicle behind PLAINTIFF and initiated a traffic stop.

16. DEFENDANT CRAWFORD and DEFENDANT BELLAMY approached PLAINTIFF's vehicle shining bright lights throughout the interior of the vehicle while questioning PLAINTIFF about allegedly expired tags.

3

17. PLAINTIFF explained that her father typically handled vehicle registration matters and that she was unaware of any issue concerning the tags.

18. DEFENDANTS questioned whether the vehicle belonged to PLAINTIFF, at which time PLAINTIFF produced the title to the vehicle demonstrating ownership.

19. DEFENDANTS collected identification from PLAINTIFF and the passengers of the vehicle and returned to their police vehicle.

20. Shortly thereafter, DEFENDANT CRAWFORD returned to PLAINTIFF's vehicle, opened the driver-side door, and informed PLAINTIFF that she was being detained because of an alleged warrant for a probation violation from Canton, Michigan.

21. Before exiting the vehicle, PLAINTIFF removed her cellular phone and bank card from her pocket, placed them on the driver seat, and informed her boyfriend where the items were located.

22. DEFENDANT CRAWFORD searched PLAINTIFF's person, handcuffed PLAINTIFF, and escorted PLAINTIFF to the patrol vehicle.

23. While near the patrol vehicle, DEFENDANT CRAWFORD conducted an additional pat-down and search of PLAINTIFF's body, including touching PLAINTIFF in a manner that caused PLAINTIFF discomfort and concern.

24. PLAINTIFF requested a female officer during the search process because of the manner in which DEFENDANT CRAWFORD searched her person.

25. PLAINTIFF was then placed inside the patrol vehicle while handcuffed.

26. While detained inside the patrol vehicle, PLAINTIFF informed DEFENDANTS that she was experiencing an asthma flare-up and requested access to her inhaler.

27. DEFENDANTS denied PLAINTIFF access to her inhaler despite being informed of PLAINTIFF's breathing concerns.

28. While PLAINTIFF remained restrained and detained inside the patrol vehicle, DEFENDANT CRAWFORD returned to PLAINTIFF's vehicle and later came back into possession of PLAINTIFF's cellular phone.

29. DEFENDANT BELLAMY was aware that DEFENDANT CRAWFORD had possession of PLAINTIFF's cellphone.

30. DEFENDANT CRAWFORD informed PLAINTIFF that her boyfriend wanted PLAINTIFF's mother's telephone number, and DEFENDANT CRAWFORD represented that access to PLAINTIFF's cellphone was necessary to retrieve that information.

31. While holding PLAINTIFF's cellphone, DEFENDANT CRAWFORD requested PLAINTIFF's password to unlock her cellphone.

32. PLAINTIFF, while handcuffed and under custodial control, provided the password after DEFENDANT CRAWFORD represented that the request was limited to obtaining contact information regarding her mother's contact information.

33. PLAINTIFF observed DEFENDANT CRAWFORD unlock and navigate through the contents of PLAINTIFF's cellphone.

34. DEFENDANT CRAWFORD wrote down PLAINTIFF's mother's telephone number and additionally received information relating to PLAINTIFF's bank card pin number.

35. Despite obtaining the requested information, DEFENDANT CRAWFORD retained possession and control over PLAINTIFF's cellular phone.

36. DEFENDANT BELLAMY witnessed DEFENDANT CRAWFORD retain possession of PLAINTIFF's cellphone.

37. During transport, PLAINTIFF repeatedly questioned why DEFENDANTS followed her from the gas station and how DEFENDANTS allegedly identified expired tags before positioning themselves behind PLAINTIFF's vehicle.

38. PLAINTIFF does not believe that expired tags were the reason DEFENDANT CRAWFORD and DEFENDANT BELLAMY stopped her.

39. PLAINTIFF repeatedly informed DEFENDANTS that she urgently needed to use the restroom while restrained inside the police vehicle.

40. PLAINTIFF additionally asked whether she was ultimately going to be released or arrested, and DEFENDANTS informed PLAINTIFF that they were still waiting to determine whether Canton authorities intended to take custody of PLAINTIFF.

41. Upon arrival at the Detroit Detention Center ("DDC"), DEFENDANTS remained in possession and control of PLAINTIFF's cellphone.

42. While seated inside the patrol vehicle at the DDC, PLAINTIFF heard movement involving her cellphone while DEFENDANTS continued processing paperwork related to PLAINTIFF's detention.

43. DEFENDANT BELLAMY physically possessed PLAINTIFF's cellphone during portions of the jail processing procedure.

44. PLAINTIFF was escorted through jail intake procedures, including metal detection procedures and removal of shoes and socks.

45. During processing and transport, DEFENDANT CRAWFORD repeatedly engaged PLAINTIFF in personal conversations unrelated to legitimate law enforcement purposes, including questions regarding PLAINTIFF's relationship, probation status, family, and other personal matters.

46. DEFENDANT CRAWFORD also made repeated comments and inquiries concerning PLAINTIFF's relationship with her boyfriend and other personal matters while PLAINTIFF remained restrained and under police custody.

47. PLAINTIFF was ultimately transferred into the custody of Canton authorities.

48. After later receiving access to her cellphone while in Canton custody, PLAINTIFF discovered that sexually explicit videos depicting PLAINTIFF and her boyfriend had been transmitted from PLAINTIFF's cellphone to an unknown number during the time PLAINTIFF was detained and while DEFENDANTS possessed and controlled PLAINTIFF's cellphone.

49. PLAINTIFF later discovered additional sexually explicit videos and nude photographs within the recently deleted portion of the device, including intimate videos and nude photographs depicting PLAINTIFF.

50. After realizing the material had been sent during the time of her detention, PLAINTIFF immediately contacted law enforcement authorities and reported the incident.

51. Shortly after PLAINTIFF reported the misconduct, DEFENDANT CRAWFORD appeared at PLAINTIFF's residence driving a Detroit Police vehicle claiming to possess a warrant for PLAINTIFF's arrest.

52. When individuals at the residence requested to see the alleged warrant, DEFENDANT CRAWFORD left the residence without producing any warrant.

53. DEFENDANT CRAWFORD additionally requested information from individuals at the home regarding where PLAINTIFF's family members resided in an attempt to locate PLAINTIFF.

54. Thereafter, PLAINTIFF was contacted and told to bring her cellphone to a location.

55. PLAINTIFF's cellphone was retrieved for forensic review and investigation into the misconduct involving the cellphone.

56. PLAINTIFF was subsequently informed by investigators that DEFENDANT CRAWFORD had been arrested in connection with the misconduct involving PLAINTIFF's cellphone and private material.

57. Investigators further informed PLAINTIFF that DEFENDANT CRAWFORD falsely claimed that he and PLAINTIFF had been engaged in a romantic relationship for approximately seven months and that he had attended family gatherings with PLAINTIFF and personally knew members of PLAINTIFF's family.

58. The statements made by DEFENDANT CRAWFORD were entirely false and fabricated.

59. PLAINTIFF has never had any romantic, sexual, personal, social, or familial relationship with DEFENDANT CRAWFORD,

60. PLAINTIFF has never invited DEFENDANT CRAWFORD to family gatherings, and has never seen or interacted with DEFENDANT CRAWFORD prior to the incident giving rise to this lawsuit.

## COUNT I
## 42 U.S.C. § 1983 – UNLAWFUL SEARCH
### (Defendant Crawford)

61. PLAINTIFF incorporates by reference the above paragraphs.

62. DEFENDANT CRAWFORD intentionally searched PLAINTIFF's cellular phone without a warrant supported by probable cause.

63. Any purported consent obtained from PLAINTIFF was involuntary because PLAINTIFF was handcuffed, detained, and under custodial police authority when DEFENDANT CRAWFORD demanded access to the cellphone for fraudulent reasons.

64. DEFENDANT CRAWFORD exceeded any limited purpose associated with obtaining contact information and instead accessed private portions of PLAINTIFF's cellphone unrelated to legitimate law enforcement objectives.

65. DEFENDANT CRAWFORD's conduct violated PLAINTIFF's clearly established rights under the Fourth Amendment to the United States Constitution.

66. As a direct and proximate result of DEFENDANT CRAWFORD's actions, PLAINTIFF suffered humiliation, emotional distress, embarrassment, invasion of privacy, anxiety, and damages.

## COUNT II
## 42 U.S.C. § 1983 – UNLAWFUL SEIZURE
### (All Defendants)

67. PLAINTIFF incorporates by reference the above paragraphs.

68. DEFENDANTS intentionally seized and retained possession of PLAINTIFF's cellphone and electronic property without lawful justification.

69. DEFENDANTS maintained possession and control over PLAINTIFF's cellphone throughout the detention, transport, and jail process while using the device for purposes unrelated to legitimate law enforcement activity.

70. DEFENDANTS' seizure and continued possession of PLAINTIFF's cellphone was objectively unreasonable under the Fourth Amendment.

71. As a direct and proximate result of DEFENDANTS' actions, PLAINTIFF suffered damages.

## COUNT III
## 42 U.S.C. § 1983 – COERCED CONSENT
### (Defendant Crawford)

72. PLAINTIFF incorporates by reference the above paragraphs.

73. DEFENDANT CRAWFORD requested and obtained PLAINTIFF's password while PLAINTIFF was restrained, detained, and under police control.

74. DEFENDANT CRAWFORD used his official authority and custodial control over PLAINTIFF to obtain access to PLAINTIFF's private electronic device.

75. A reasonable person in PLAINTIFF's position would not have believed she was free to refuse DEFENDANT CRAWFORD's demand for access to the cellphone.

76. Any purported consent was therefore involuntary and constitutionally invalid.

77. As a direct and proximate result of DEFENDANTS CRAWFORD's actions, PLAINTIFF suffered damages.

**COUNT IV**
**42 U.S.C. § 1983 – INVASION OF PRIVACY**
**(Defendant Crawford)**

78. PLAINTIFF incorporates by reference the above paragraphs.

79. PLAINTIFF possessed a reasonable expectation of privacy in the contents of her cellular phone, including messages, communications, videos, photographs, and private material.

80. DEFENDANT CRAWFORD's intentionally intruded into PLAINTIFF's private affairs without lawful authorization.

12

81. DEFENDANT CRAWFORD's accessed, viewed, manipulated, transmitted, and deleted private electronic material belonging to PLAINTIFF.

82. DEFENDANT CRAWFORD's conduct violated PLAINTIFF's constitutional privacy rights.

83. As a direct and proximate result of DEFENDANT's actions, PLAINTIFF suffered damages.

## COUNT V
## 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS
### (All Defendants)

84. PLAINTIFF incorporates by reference the above paragraphs.

85. DEFENDANTS abused governmental authority and custodial power for personal purposes unrelated to legitimate law enforcement objectives.

86. DEFENDANTS used PLAINTIFF's detention as an opportunity to access and exploit private material belonging to PLAINTIFF.

87. DEFENDANTS' conduct shocks the conscience and violates substantive due process protections guaranteed by the Fourteenth Amendment.

88. As a direct and proximate result of DEFENDANTS' actions, PLAINTIFF suffered damages.

## COUNT VI
## 42 U.S.C. § 1983 – FAILURE TO INTERVENE
### (Defendant Bellamy)

89. PLAINTIFF incorporates by reference the above paragraphs.

90. DEFENDANT BELLAMY knew or should have known that DEFENDANT CRAWFORD possessed and accessed PLAINTIFF's cellphone while PLAINTIFF remained handcuffed and detained.

91. DEFENDANT BELLAMY additionally possessed PLAINTIFF's cellphone during portions of the jail process and had sufficient opportunity to prevent or stop the unconstitutional conduct.

92. Despite possessing the opportunity and means to intervene, DEFENDANT BELLAMY failed to take reasonable steps to stop the violations of PLAINTIFF's rights.

93. As a direct and proximate result of DEFENDANT BELLAMY'S failure to intervene, PLAINTIFF suffered damages.

## COUNT VII
## 42 U.S.C. § 1983 – SEXUAL EXPLOITATION UNDER COLOR OF LAW
### (Defendant Crawford)

94. PLAINTIFF incorporates by reference the above paragraphs.

95. DEFENDANT CRAWFORD used official authority and custodial access obtained through PLAINTIFF's detention to gain access to sexually explicit material belonging to PLAINTIFF.

96. During the period, DEFENDANT CRAWFORD possessed and controlled PLAINTIFF's cellphone, sexually explicit videos depicting PLAINTIFF were transmitted from the device to an unknown number.

14

97. Additional sexually explicit videos and nude photographs were deleted from PLAINTIFF's cellphone while DEFENDANT CRAWFORD maintained possession and control over the device.

98. DEFENDANT CRAWFORD's conduct served no legitimate law enforcement purpose whatsoever.

99. As a direct and proximate result of DEFENDANT CRAWFORD's conduct, PLAINTIFF suffered humiliation, emotional distress, embarrassment, reputational injury, and damages.

## COUNT VIII
## 42 U.S.C. § 1983 – VIOLATION OF BODILY PRIVACY
### (Defendant Crawford)

100. PLAINTIFF incorporates by reference the above paragraphs.

101. PLAINTIFF possessed a clearly established constitutional right to bodily and sexual privacy.

102. DEFENDANT CRAWFORD violated those rights by accessing, viewing, transmitting, deleting, and exploiting intimate material depicting PLAINTIFF.

103. DEFENDANT CRAWFORD further violated PLAINTIFF's bodily privacy through intrusive searches conducted after PLAINTIFF specifically requested a female officer.

104. DEFENDANT CRAWFORD's conduct was objectively unreasonable and violated clearly established constitutional protections.

105. As a direct and proximate result of DEFENDANT CRAWFORD's actions, PLAINTIFF suffered damages.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

106. PLAINTIFF incorporates by reference the above paragraphs.

107. DEFENDANTS engaged in extreme and outrageous conduct that exceeded all possible bounds of decency.

108. DEFENDANTS intentionally or recklessly disregarded the substantial likelihood that their conduct would cause severe emotional distress to PLAINTIFF.

109. DEFENDANTS' conduct included exploiting PLAINTIFF's detention to access and misuse intimate material depicting PLAINTIFF.

110. PLAINTIFF suffered severe emotional distress, humiliation, embarrassment, anxiety, emotional trauma, and damages as a result.

## COUNT X
## ASSAULT AND BATTERY
### (Defendant Crawford)

111. PLAINTIFF incorporates by reference the above paragraphs.

16

112. DEFENDANT CRAWFORD intentionally caused harmful or offensive physical contact with PLAINTIFF without lawful justification or valid consent.

113. DEFENDANT CRAWFORD physically searched and touched PLAINTIFF in an offensive and intrusive manner after PLAINTIFF requested a female officer.

114. As a direct and proximate result of DEFENDANT CRAWFORD's conduct, PLAINTIFF suffered damages.

**COUNT XI**
**DEFAMATION PER SE**
**(Defendant Crawford)**

115. PLAINTIFF incorporates by reference the above paragraphs.

116. DEFENDANT CRAWFORD falsely stated that he and PLAINTIFF had been involved in a romantic and sexual relationship for approximately seven months.

117. DEFENDANT CRAWFORD additionally falsely claimed that he attended family gatherings with PLAINTIFF and personally knew members of PLAINTIFF's family.

118. DEFENDANT CRAWFORD communicated those statements to third parties during the investigation into his misconduct.

119. The statements were false and defamatory.

120. The statements constituted defamation per se because they falsely imputed sexual conduct, dishonesty, and immoral behavior to PLAINTIFF.

121. As a direct and proximate result of DEFENDANT CRAWFORD's statements, PLAINTIFF suffered humiliation, embarrassment, reputational harm, emotional distress, and damages.

## COUNT XII
## MONELL LIABILITY
### (Defendant Detroit)

122. PLAINTIFF incorporates by reference the above paragraphs.

123. The constitutional violations committed against PLAINTIFF were caused by customs, policies, practices, failures to supervise, failures to investigate, and failures to discipline within the Detroit Police Department.

124. DEFENDANT DETROIT failed to adequately supervise officers entrusted with access to detained individuals and personal electronic devices.

125. DEFENDANT DETROIT failed to adequately train and supervise officers concerning constitutional limitations involving electronic devices, bodily privacy, detainee treatment, and custodial misconduct.

126. DEFENDANT DETROIT was deliberately indifferent to the obvious risk that officers would misuse custodial authority and access to private electronic devices.

127. The customs, practices, and failures described herein were moving forces behind the constitutional violations committed against PLAINTIFF.

128. As a direct and proximate result of DEFENDANT DETROIT's conduct, PLAINTIFF suffered damages.

WHEREFORE, PLAINTIFF respectfully requests judgment in her favor $15,000,000 (Fifteen-Million Dollars) against DEFENDANTS for compensatory damages, punitive damages, attorney fees pursuant to 42 U.S.C. § 1988, costs, interest, and all other relief this Court deems just and proper.

Dated: June 10, 2026                     Respectfully Submitted,

                                         /s/Ivan L. Land
                                         Ivan L. Land (P65879)
                                         Law Offices of Ivan L. Land, P.C.
                                         25900 Greenfield Rd., Suite 210
                                         Oak Park, MI  48237-1267
                                         248.968.4545 / (f) 248.968.4540
                                         ill4law@aol.com
                                         **Attorney for PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SAMANTHA THOMASON,
    an individual,
                                 Case No.
                                         Hon.

        Plaintiff,

V

CITY OF DETROIT                             **DEMAND FOR TRIAL BY**
a municipal corporation,                        **JURY**

DEROND MARTEZ CRAWFORD,
City of Detroit Police Officer,
Individually, and in her Official Capacities,

MAURICE BELLAMY,
City of Detroit Police Officer,
Individually, and in her Official Capacities,

        Defendants.

---

## DEMAND FOR TRIAL BY JURY

    NOW COMES Plaintiff hereby demands a trial by jury.

Dated: June 10, 2026                    Respectfully Submitted,

                                        /s/Ivan L. Land
                                        Ivan L. Land (P65879)
                                        Law Offices of Ivan L. Land, P.C.
                                        25900 Greenfield Rd., Suite 210
                                        Oak Park, MI  48237-1267
                                        248.968.4545 / (f) 248.968.4540
                                        ill4law@aol.com
                                        **Attorney for PLAINTIFF**

20