**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SAMANTHA THOMASON,
an individual,

Plaintiff,

Case No. 2:26-cv-11938
Hon. Mark A. Goldsmith

V

CITY OF DETROIT
a municipal corporation,

DEROND MARTEZ CRAWFORD,
City of Detroit Police Officer,
Individually, and in his Official Capacity,

MAURICE BELLAMY,
City of Detroit Police Officer,
Individually, and in his Official Capacity,

Defendants.

**FIRST AMENDED COMPLAINT**

---

## FIRST AMENDED COMPLAINT

NOW COMES PLAINTIFF, SAMANTHA THOMASON, by and through counsel, and files this First Amended Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1), and for her First Amended Complaint against DEFENDANTS states as follows:

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over PLAINTIFF's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred within Wayne County, Michigan.

## **PARTIES**

5. PLAINTIFF, SAMANTHA THOMASON, hereinafter referred to as "PLAINTIFF," is an adult resident of the State of Michigan.

6. DEFENDANT CITY OF DETROIT, hereinafter referred to as "DEFENDANT DETROIT," is a municipal corporation organized and existing under the laws of the State of Michigan.

7. DEFENDANT OFFICER DEROND MARTEZ CRAWFORD, hereinafter referred to as "DEFENDANT CRAWFORD," was at all relevant times a police officer employed by the Detroit Police Department and acting under color of state law.

8. DEFENDANT OFFICER MAURICE BELLAMY, hereinafter referred to as "DEFENDANT BELLAMY," was at all relevant times a police officer

employed by the Detroit Police Department and acting under color of state law.

9. At all relevant times, DEFENDANTS acted under color of state law and within the course and scope of their employment and authority.

## FACTUAL ALLEGATIONS

10. On or about March 3, 2026, PLAINTIFF left Greektown Casino in downtown Detroit with her boyfriend, Lorenzo Holloman, and Matthew Bridges.

11. PLAINTIFF stopped at a Sunoco gas station at 17230 Harper Avenue Detroit, Michigan 48224 near her residence.

12. While inside the gas station, PLAINTIFF accidentally bumped into two individuals later identified as Detroit police officers and immediately apologized.

13. After checking out of the gas station, PLAINTIFF entered her vehicle and drove toward her residence, which was located only a short distance away.

14. As PLAINTIFF exited the gas station, DEFENDANT CRAWFORD and DEFENDANT BELLAMY began following PLAINTIFF's vehicle.

15. When PLAINTIFF approached the intersection near Morang and Harper Avenue, DEFENDANTS positioned their vehicle behind PLAINTIFF and initiated a traffic stop.

16. DEFENDANT CRAWFORD and DEFENDANT BELLAMY approached PLAINTIFF's vehicle shining bright lights throughout the interior of the vehicle while questioning PLAINTIFF about allegedly expired tags.

17. PLAINTIFF explained that her father typically handled vehicle registration matters and that she was unaware of any issue concerning the tags.

18. DEFENDANTS questioned whether the vehicle belonged to PLAINTIFF, at which time PLAINTIFF produced the title to the vehicle demonstrating ownership.

19. DEFENDANTS collected identification from PLAINTIFF and the passengers of the vehicle and returned to their police vehicle.

20. Shortly thereafter, DEFENDANT CRAWFORD returned to PLAINTIFF's vehicle, opened the driver-side door, and informed PLAINTIFF that she was being detained because of an alleged warrant for a probation violation from Canton, Michigan.

21. Before exiting the vehicle, PLAINTIFF removed her cellular phone and bank card from her pocket, placed them on the driver seat, and informed her boyfriend where the items were located.

22. DEFENDANT CRAWFORD searched PLAINTIFF's person, handcuffed PLAINTIFF, and escorted PLAINTIFF to the patrol vehicle.

23. While near the patrol vehicle, DEFENDANT CRAWFORD conducted an additional pat-down and search of PLAINTIFF's body, including touching PLAINTIFF in a manner that caused PLAINTIFF discomfort and concern.

24. PLAINTIFF requested a female officer during the search process because of the manner in which DEFENDANT CRAWFORD searched her person.

25. PLAINTIFF was then placed inside the patrol vehicle while handcuffed.

26. While detained inside the patrol vehicle, PLAINTIFF informed DEFENDANTS that she was experiencing an asthma flare-up and requested access to her inhaler.

27. DEFENDANTS denied PLAINTIFF access to her inhaler despite being informed of PLAINTIFF's breathing concerns.

28. While PLAINTIFF remained restrained and detained inside the patrol vehicle, DEFENDANT CRAWFORD returned to PLAINTIFF's vehicle and later came back into possession of PLAINTIFF's cellular phone.

29. DEFENDANT BELLAMY was aware that DEFENDANT CRAWFORD had possession of PLAINTIFF's cellphone.

30. DEFENDANT CRAWFORD informed PLAINTIFF that her boyfriend wanted PLAINTIFF's mother's telephone number, and DEFENDANT CRAWFORD represented that access to PLAINTIFF's cellphone was necessary to retrieve that information.

31. While holding PLAINTIFF's cellphone, DEFENDANT CRAWFORD requested PLAINTIFF's password to unlock her cellphone.

32. PLAINTIFF, while handcuffed and under custodial control, provided the password after DEFENDANT CRAWFORD represented that the request was limited to obtaining her mother's contact information.

33. PLAINTIFF observed DEFENDANT CRAWFORD unlock and navigate through the contents of PLAINTIFF's cellphone.

34. DEFENDANT CRAWFORD wrote down PLAINTIFF's mother's telephone number and additionally received information relating to PLAINTIFF's bank card PIN.

35. Despite obtaining the requested information, DEFENDANT CRAWFORD retained possession and control over PLAINTIFF's cellular phone.

36. DEFENDANT BELLAMY witnessed DEFENDANT CRAWFORD retain possession of PLAINTIFF's cellphone.

37. During transport, PLAINTIFF repeatedly questioned why DEFENDANTS followed her from the gas station and how DEFENDANTS allegedly identified expired tags before positioning themselves behind PLAINTIFF's vehicle.

38. PLAINTIFF does not believe that expired tags were the reason DEFENDANT CRAWFORD and DEFENDANT BELLAMY stopped her.

39. PLAINTIFF repeatedly informed DEFENDANTS that she urgently needed to use the restroom while restrained inside the police vehicle.

40. PLAINTIFF additionally asked whether she was ultimately going to be released or arrested, and DEFENDANTS informed PLAINTIFF that they were still waiting to determine whether Canton authorities intended to take custody of PLAINTIFF.

41. Upon arrival at the Detroit Detention Center ("DDC"), DEFENDANTS remained in possession and control of PLAINTIFF's cellphone.

42. While seated inside the patrol vehicle at the DDC, PLAINTIFF heard movement involving her cellphone while DEFENDANTS continued processing paperwork related to PLAINTIFF's detention.

43. DEFENDANT BELLAMY physically possessed PLAINTIFF's cellphone during portions of the jail processing procedure.

44. PLAINTIFF was escorted through jail intake procedures, including metal detection procedures and removal of shoes and socks.

45. During processing and transport, DEFENDANT CRAWFORD repeatedly engaged PLAINTIFF in personal conversations unrelated to legitimate law enforcement purposes, including questions regarding PLAINTIFF's relationship, probation status, family, and other personal matters.

46. DEFENDANT CRAWFORD also made repeated comments and inquiries concerning PLAINTIFF's relationship with her boyfriend and other personal matters while PLAINTIFF remained restrained and under police custody.

47. PLAINTIFF was ultimately transferred into the custody of Canton authorities.

48. After later receiving access to her cellphone while in Canton custody, PLAINTIFF discovered that sexually explicit videos depicting PLAINTIFF and her boyfriend had been transmitted from PLAINTIFF's cellphone to an unknown number during the time PLAINTIFF was detained and while DEFENDANTS possessed and controlled PLAINTIFF's cellphone.

49. PLAINTIFF later discovered additional sexually explicit videos and nude photographs within the recently deleted portion of the device, including intimate videos and nude photographs depicting PLAINTIFF.

50. After realizing the material had been sent during the time of her detention, PLAINTIFF immediately contacted law enforcement authorities and reported the incident.

51. Shortly after PLAINTIFF reported the misconduct, DEFENDANT CRAWFORD appeared at PLAINTIFF's residence driving a Detroit Police vehicle claiming to possess a warrant for PLAINTIFF's arrest.

52. When individuals at the residence requested to see the alleged warrant, DEFENDANT CRAWFORD left the residence without producing any warrant.

53. DEFENDANT CRAWFORD additionally requested information from individuals at the home regarding where PLAINTIFF's family members resided in an attempt to locate PLAINTIFF.

54. Thereafter, PLAINTIFF was contacted and told to bring her cellphone to a location.

55. PLAINTIFF's cellphone was retrieved for forensic review and investigation into the misconduct involving the cellphone.

56. PLAINTIFF was subsequently informed by investigators that DEFENDANT CRAWFORD had been arrested in connection with the misconduct involving PLAINTIFF's cellphone and private material.

57. Investigators further informed PLAINTIFF that DEFENDANT CRAWFORD falsely claimed that he and PLAINTIFF had been engaged in a romantic relationship for approximately seven months and that he had attended family gatherings with PLAINTIFF and personally knew members of PLAINTIFF's family.

58. The statements made by DEFENDANT CRAWFORD were entirely false and fabricated.

59. PLAINTIFF has never had any romantic, sexual, personal, social, or familial relationship with DEFENDANT CRAWFORD.

60. PLAINTIFF has never invited DEFENDANT CRAWFORD to family gatherings, and has never seen or interacted with DEFENDANT CRAWFORD prior to the incident giving rise to this lawsuit.

**COUNT I**
**42 U.S.C. § 1983 – UNLAWFUL SEARCH**
**(Defendant Crawford)**

61. PLAINTIFF incorporates by reference the above paragraphs.

62. DEFENDANT CRAWFORD intentionally searched PLAINTIFF's cellular phone without a warrant supported by probable cause.

63. Any purported consent obtained from PLAINTIFF was involuntary because PLAINTIFF was handcuffed, detained, and under custodial police authority when DEFENDANT CRAWFORD demanded access to the cellphone for fraudulent reasons.

64. DEFENDANT CRAWFORD exceeded any limited purpose associated with obtaining contact information and instead accessed private portions of PLAINTIFF's cellphone unrelated to legitimate law enforcement objectives.

65. DEFENDANT CRAWFORD's conduct violated PLAINTIFF's clearly established rights under the Fourth Amendment to the United States Constitution.

66. As a direct and proximate result of DEFENDANT CRAWFORD's actions, PLAINTIFF suffered humiliation, emotional distress, embarrassment, invasion of privacy, anxiety, and damages.

**COUNT II**
**42 U.S.C. § 1983 – UNLAWFUL SEIZURE**
**(All Defendants)**

67. PLAINTIFF incorporates by reference the above paragraphs.

68. DEFENDANTS intentionally seized and retained possession of PLAINTIFF's cellphone and electronic property without lawful justification.

69. DEFENDANTS maintained possession and control over PLAINTIFF's cellphone throughout the detention, transport, and jail process while using the device for purposes unrelated to legitimate law enforcement activity.

70. DEFENDANTS' seizure and continued possession of PLAINTIFF's cellphone was objectively unreasonable under the Fourth Amendment.

71. As a direct and proximate result of DEFENDANTS' actions, PLAINTIFF suffered damages.

**COUNT III**
**42 U.S.C. § 1983 – COERCED CONSENT**
**(Defendant Crawford)**

72. PLAINTIFF incorporates by reference the above paragraphs.

73. DEFENDANT CRAWFORD requested and obtained PLAINTIFF's password while PLAINTIFF was restrained, detained, and under police control.

74. DEFENDANT CRAWFORD used his official authority and custodial control over PLAINTIFF to obtain access to PLAINTIFF's private electronic device.

75. A reasonable person in PLAINTIFF's position would not have believed she was free to refuse DEFENDANT CRAWFORD's demand for access to the cellphone.

76. Any purported consent was therefore involuntary and constitutionally invalid.

77. As a direct and proximate result of DEFENDANT CRAWFORD's actions, PLAINTIFF suffered damages.

**COUNT IV**
**42 U.S.C. § 1983 – INVASION OF PRIVACY**
**(Defendant Crawford)**

78. PLAINTIFF incorporates by reference the above paragraphs.

79. PLAINTIFF possessed a reasonable expectation of privacy in the contents of her cellular phone, including messages, communications, videos, photographs, and private material.

80. DEFENDANT CRAWFORD intentionally intruded into PLAINTIFF's private affairs without lawful authorization.

81. DEFENDANT CRAWFORD accessed, viewed, manipulated, transmitted, and deleted private electronic material belonging to PLAINTIFF.

82. DEFENDANT CRAWFORD's conduct violated PLAINTIFF's constitutional privacy rights.

83. As a direct and proximate result of DEFENDANT CRAWFORD's actions, PLAINTIFF suffered damages.

**COUNT V**
**42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS**
**(All Defendants)**

84. PLAINTIFF incorporates by reference the above paragraphs.

85. DEFENDANTS abused governmental authority and custodial power for personal purposes unrelated to legitimate law enforcement objectives.

86. DEFENDANTS used PLAINTIFF's detention as an opportunity to access and exploit private material belonging to PLAINTIFF.

87. DEFENDANTS' conduct shocks the conscience and violates substantive due process protections guaranteed by the Fourteenth Amendment.

88. As a direct and proximate result of DEFENDANTS' actions, PLAINTIFF suffered damages.

**COUNT VI**
**42 U.S.C. § 1983 – FAILURE TO INTERVENE**
**(Defendant Bellamy)**

89. PLAINTIFF incorporates by reference the above paragraphs.

90. DEFENDANT BELLAMY knew or should have known that DEFENDANT CRAWFORD possessed and accessed PLAINTIFF's cellphone while PLAINTIFF remained handcuffed and detained.

91. DEFENDANT BELLAMY additionally possessed PLAINTIFF's cellphone during portions of the jail process and had sufficient opportunity to prevent or stop the unconstitutional conduct.

92. Despite possessing the opportunity and means to intervene, DEFENDANT BELLAMY failed to take reasonable steps to stop the violations of PLAINTIFF's rights.

93. As a direct and proximate result of DEFENDANT BELLAMY's failure to intervene, PLAINTIFF suffered damages.

**COUNT VII**
**42 U.S.C. § 1983 – SEXUAL EXPLOITATION UNDER COLOR OF LAW**
**(Defendant Crawford)**

94. PLAINTIFF incorporates by reference the above paragraphs.

95. DEFENDANT CRAWFORD used official authority and custodial access obtained through PLAINTIFF's detention to gain access to sexually explicit material belonging to PLAINTIFF.

96. During the period in which DEFENDANT CRAWFORD possessed and controlled PLAINTIFF's cellphone, sexually explicit videos depicting PLAINTIFF were transmitted from the device to an unknown number.

97. Additional sexually explicit videos and nude photographs were deleted from PLAINTIFF's cellphone while DEFENDANT CRAWFORD maintained possession and control over the device.

98. DEFENDANT CRAWFORD's conduct served no legitimate law enforcement purpose whatsoever.

99. As a direct and proximate result of DEFENDANT CRAWFORD's conduct, PLAINTIFF suffered humiliation, emotional distress, embarrassment, reputational injury, and damages.

**COUNT VIII**
**42 U.S.C. § 1983 – VIOLATION OF BODILY PRIVACY**
**(Defendant Crawford)**

100. PLAINTIFF incorporates by reference the above paragraphs.

101. PLAINTIFF possessed a clearly established constitutional right to bodily and sexual privacy.

102. DEFENDANT CRAWFORD violated those rights by accessing, viewing, transmitting, deleting, and exploiting intimate material depicting PLAINTIFF.

103. DEFENDANT CRAWFORD further violated PLAINTIFF's bodily privacy through intrusive searches conducted after PLAINTIFF specifically requested a female officer.

104. DEFENDANT CRAWFORD's conduct was objectively unreasonable and violated clearly established constitutional protections.

105. As a direct and proximate result of DEFENDANT CRAWFORD's actions, PLAINTIFF suffered damages.

**COUNT IX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(All Defendants)**

106. PLAINTIFF incorporates by reference the above paragraphs.

107. DEFENDANTS engaged in extreme and outrageous conduct that exceeded all possible bounds of decency.

108. DEFENDANTS intentionally or recklessly disregarded the substantial likelihood that their conduct would cause severe emotional distress to PLAINTIFF.

109. DEFENDANTS' conduct included exploiting PLAINTIFF's detention to access and misuse intimate material depicting PLAINTIFF.

110. PLAINTIFF suffered severe emotional distress, humiliation, embarrassment, anxiety, emotional trauma, and damages as a result.

**COUNT X**
**ASSAULT AND BATTERY**
**(Defendant Crawford)**

111. PLAINTIFF incorporates by reference the above paragraphs.

112. DEFENDANT CRAWFORD intentionally caused harmful or offensive physical contact with PLAINTIFF without lawful justification or valid consent.

113. DEFENDANT CRAWFORD physically searched and touched PLAINTIFF in an offensive and intrusive manner after PLAINTIFF requested a female officer.

114. As a direct and proximate result of DEFENDANT CRAWFORD's conduct, PLAINTIFF suffered damages.

**COUNT XI**
**DEFAMATION PER SE**
**(Defendant Crawford)**

115. PLAINTIFF incorporates by reference the above paragraphs.

116. DEFENDANT CRAWFORD falsely stated that he and PLAINTIFF had been involved in a romantic and sexual relationship for approximately seven months.

117. DEFENDANT CRAWFORD additionally falsely claimed that he attended family gatherings with PLAINTIFF and personally knew members of PLAINTIFF's family.

118. DEFENDANT CRAWFORD communicated those statements to third parties during the investigation into his misconduct.

119. The statements were false and defamatory.

120. The statements constituted defamation per se because they falsely imputed sexual conduct, dishonesty, and immoral behavior to PLAINTIFF.

121. As a direct and proximate result of DEFENDANT CRAWFORD's statements, PLAINTIFF suffered humiliation, embarrassment, reputational harm, emotional distress, and damages.

**COUNT XII**
**MONELL LIABILITY**
**(Defendant Detroit)**

122. PLAINTIFF incorporates by reference the above paragraphs.

123. DEFENDANT DETROIT, through the Detroit Police Department, was responsible for establishing, implementing, enforcing, and supervising policies, customs, practices, training, and procedures governing officers' treatment of detainees and their personal property, including cellular phones and other electronic devices.

124. Detroit police officers routinely encounter, seize, possess, transport, safeguard, and obtain access to cellular phones and other electronic devices belonging to detained individuals.

125. Cellular phones contain highly private and sensitive personal information, including photographs, videos, communications, financial information, passwords, and intimate material, creating an obvious and foreseeable risk of

serious constitutional injury if officers are not properly trained and supervised concerning access to and use of those devices.

126. DEFENDANT DETROIT failed to establish and enforce adequate safeguards, supervision, training, and disciplinary measures concerning officers' access to, possession of, retention of, and use of cellular phones belonging to detained individuals.

127. DEFENDANT DETROIT further failed to adequately train and supervise its officers concerning constitutional limitations governing searches and seizures of electronic devices, detainee privacy, bodily and sexual privacy, and the prohibition against using custodial authority for personal purposes.

128. Upon information and belief, DEFENDANT DETROIT maintained customs, practices, or patterns that permitted officers to exercise substantial unsupervised possession and control over detainees' cellular phones and personal electronic information without adequate safeguards against unauthorized access or misuse.

129. The misconduct alleged herein occurred during an ordinary police detention, transportation, and jail-processing procedure in which both DEFENDANT CRAWFORD and DEFENDANT BELLAMY exercised possession or control over PLAINTIFF's cellular phone.

130. The ability of multiple officers to retain and physically possess PLAINTIFF's unlocked cellular phone during detention and processing without adequate safeguards, supervision, documentation, or intervention permitted the unconstitutional conduct alleged herein to occur.

131. DEFENDANT DETROIT knew or should have known that the absence of adequate policies, safeguards, training, supervision, investigation, and discipline concerning officers' access to detainees' electronic devices created an obvious and substantial risk that officers would misuse their custodial authority and violate constitutional rights.

132. Despite that obvious and foreseeable risk, DEFENDANT DETROIT acted with deliberate indifference to the constitutional rights of persons with whom its officers came into contact.

133. DEFENDANT DETROIT's customs, practices, failures to train, failures to supervise, and failures to establish adequate safeguards were moving forces behind the constitutional violations suffered by PLAINTIFF.

134. As a direct and proximate result of DEFENDANT DETROIT's conduct, PLAINTIFF suffered damages.

**COUNT XIII**
**INTRUSION UPON SECLUSION**
**(Defendant Crawford)**

135. PLAINTIFF incorporates by reference the above paragraphs.

136. PLAINTIFF possessed a right to privacy in the contents of her cellular phone, including her sexually explicit videos, nude photographs, personal communications, and other intimate material.

137. The sexually explicit videos, nude photographs, and other intimate material contained within PLAINTIFF's cellular phone concerned secret and private matters that PLAINTIFF had a right to keep private.

138. DEFENDANT CRAWFORD intentionally intruded into PLAINTIFF's private affairs by obtaining access to PLAINTIFF's cellular phone under the represented purpose of obtaining contact information and thereafter accessing, viewing, manipulating, transmitting, and deleting private and intimate material unrelated to any legitimate law enforcement purpose.

139. DEFENDANT CRAWFORD's method of obtaining and accessing PLAINTIFF's private and intimate information through the use of his police authority and custodial control would be highly offensive and objectionable to a reasonable person.

140. As a direct and proximate result of DEFENDANT CRAWFORD's intrusion upon PLAINTIFF's seclusion, PLAINTIFF suffered humiliation, embarrassment, emotional distress, anxiety, invasion of privacy, and damages.

**COUNT XIV**
**PUBLIC DISCLOSURE OF PRIVATE FACTS**
**(Defendant Crawford)**

141. PLAINTIFF incorporates by reference the above paragraphs.

142. PLAINTIFF's sexually explicit videos, nude photographs, and other intimate material constituted private facts concerning matters that PLAINTIFF had not made public.

143. During the period in which DEFENDANT CRAWFORD possessed and controlled PLAINTIFF's cellular phone, sexually explicit videos depicting PLAINTIFF were transmitted from PLAINTIFF's cellular phone to a telephone number unknown to PLAINTIFF.

144. The sexually explicit videos and nude photographs depicted intensely private and sexual aspects of PLAINTIFF's life and were not matters of legitimate public concern.

145. Disclosure and dissemination of such sexually explicit and intimate material would be highly offensive to a reasonable person.

146. As a direct and proximate result of DEFENDANT CRAWFORD's disclosure of PLAINTIFF's private and intimate material, PLAINTIFF suffered humiliation, embarrassment, emotional distress, anxiety, reputational harm, invasion of privacy, and damages.

**COUNT XV**
**CONVERSION**
**(Defendant Crawford)**

147. PLAINTIFF incorporates by reference the above paragraphs.

148. PLAINTIFF owned and possessed the cellular phone and the private electronic photographs, videos, data, and other material stored within the device.

149. DEFENDANT CRAWFORD obtained and retained possession and control of PLAINTIFF's cellular phone after the limited purpose represented to PLAINTIFF for obtaining access to the device had ended.

150. DEFENDANT CRAWFORD thereafter exercised unauthorized dominion and control over PLAINTIFF's cellular phone and electronically stored property by accessing, viewing, manipulating, transmitting, and deleting private electronic material in a manner inconsistent with PLAINTIFF's ownership and possessory rights.

151. DEFENDANT CRAWFORD's exercise of dominion and control over PLAINTIFF's property was unauthorized and inconsistent with PLAINTIFF's rights as the owner of the cellular phone and its private contents.

152. As a direct and proximate result of DEFENDANT CRAWFORD's conversion of PLAINTIFF's property, PLAINTIFF suffered loss of control over her property, invasion of privacy, emotional distress, and damages.

**COUNT XVI**
**CIVIL CONSPIRACY**
**(Defendants Crawford and Bellamy)**

153. PLAINTIFF incorporates by reference the above paragraphs.

154. DEFENDANTS CRAWFORD and BELLAMY acted jointly and in concert during PLAINTIFF's detention, transportation, and processing while exercising possession and control over PLAINTIFF's cellular phone.

155. DEFENDANT CRAWFORD obtained PLAINTIFF's password while PLAINTIFF was restrained and under custodial control after representing that access to the cellular phone was necessary only to obtain contact information.

156. After obtaining that information, DEFENDANT CRAWFORD continued to retain possession and control of PLAINTIFF's cellular phone despite the stated purpose for obtaining access having ended.

157. DEFENDANT BELLAMY knew that DEFENDANT CRAWFORD had obtained and retained PLAINTIFF's cellular phone while PLAINTIFF remained detained and restrained.

158. DEFENDANT BELLAMY thereafter personally possessed PLAINTIFF's cellular phone during portions of the detention and jail-processing procedure while DEFENDANT CRAWFORD continued to exercise access to and control over the device.

159. During the period in which DEFENDANTS CRAWFORD and BELLAMY jointly exercised possession and control over PLAINTIFF's cellular phone, sexually explicit videos depicting PLAINTIFF were transmitted from the

device and additional sexually explicit videos and nude photographs were deleted.

160. The circumstances, acts, conduct, shared possession of the device, knowledge of its continued retention, and coordinated control exercised by DEFENDANTS CRAWFORD and BELLAMY support the inference that DEFENDANTS acted pursuant to a tacit agreement, common design, or concerted plan concerning the unauthorized possession, access, or misuse of PLAINTIFF's cellular phone and private electronic material.

161. DEFENDANTS' agreement and concerted conduct were undertaken to accomplish unlawful acts, including the unauthorized possession, access, transmission, deletion, concealment, or misuse of PLAINTIFF's private electronic material, or to accomplish otherwise lawful acts through unlawful means.

162. As a direct and proximate result of DEFENDANTS' concerted actions and the underlying unlawful acts committed against PLAINTIFF, PLAINTIFF suffered humiliation, embarrassment, emotional distress, anxiety, invasion of privacy, and damages.

WHEREFORE, PLAINTIFF respectfully requests judgment in her favor in the amount of $15,000,000 (Fifteen Million Dollars) against DEFENDANTS for compensatory damages, punitive damages against the individual DEFENDANTS to

the extent permitted by law, attorney fees pursuant to 42 U.S.C. § 1988, costs, interest, and all other relief this Court deems just and proper.

Dated: August 31, 2026

Respectfully Submitted,

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI 48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SAMANTHA THOMASON,
an individual,

Plaintiff,

Case No. 2:26-cv-11938
Hon. Mark A. Goldsmith

V

CITY OF DETROIT
a municipal corporation,

DEROND MARTEZ CRAWFORD,
City of Detroit Police Officer,
Individually, and in his Official Capacity,

MAURICE BELLAMY,
City of Detroit Police Officer,
Individually, and in his Official Capacity,

Defendants.

**DEMAND FOR TRIAL BY JURY**

---

**DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff hereby demands a trial by jury.

Dated: August 31, 2026

Respectfully Submitted,

/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI 48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**